IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| DONNA ASH, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action |
| ) | No. 10-5060-SW-JCE-SSA |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| Defendant. ) | |

**ORDER**

This case involves the appeal of a final decision of the Secretary denying plaintiff's application for supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), this Court may review the final decisions of the Secretary. Pending before the Court at this time are plaintiff's brief, and defendant's reply brief in support of the administrative decision. For the reasons stated herein, it will be ordered that the decision of the Administrative Law Judge ["ALJ"] be affirmed.

Standard of Review

Judicial review of disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision. Robinson v.

Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. A disabling impairment is one which precludes engaging "in any substantial gainful activity [for at least twelve months] by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A finding of "not disabled" will be made if a claimant does not "have any impairment or combination of impairments which significantly limit [the claimant's] physical or mental ability to do basic work activities. . . ." 20 C.F.R. § 404.1520.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well-settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

## Discussion

Plaintiff was 31 years old at the time she filed her application for benefits. She completed the 11th grade, and has past relevant work in home health care.

At the hearing before the ALJ, plaintiff testified that she stopped working as a home health care aide because she started having physical problems involving pain and slowing down.

She testified that she was laid off from the job because she did not meet the criteria to perform it. She has not worked since 2007. After that, her doctor provided her a release to go back to work that limited some of the work she could perform. Her condition has worsened since then. She's more tired and slower. She has pain in her back, from the neck down, in her legs, knees, left arm, and ankles. The doctors have told her that she has fibromyalgia. She wants to sit or lie down more. Plaintiff testified that she has also been treated for her thyroid and goiter. She has problems with memory loss in terms of remembering day-to-day things, which has worsened over time. The same is true of fatigue. She feels "sluggish, just don't feel like doing anything." [Tr. 25]. Plaintiff has weakness as well. The pain in her back and legs is constant; it comes and goes in her arm. Although medication alleviates it somewhat, she still has a lot of pain, which she would rate as eight on a ten-point scale, with medication, and as a ten without medication. The pain also goes down her arms into her wrists and fingers. She has difficulty grasping and holding things. She is unable to wash dishes by hand because she is too tired and has too much pain. During the day, she has to lie down because of pain or fatigue. Plaintiff estimated that she would lie down during the morning for an hour or two, in the afternoon for three hours, and then would go to bed around 8:00. She has more bad days than good ones. When she has a good day, she is able to do a few hobbies, like scrap booking, but she has to sit down to do it. She can maintain an activity such as this on a good day for about 30 minutes before she has to lie down or sit down. She thought she was about 99% slower than she used to be. She also has swelling in her ankles, which occurs if she has to stand too long.

Plaintiff also testified that she suffers from depression; she doesn't take interest in anything, and doesn't care about anything. She testified that she has problems concentrating, which makes it hard to read as much as she would like, for example. Between the pain and the

depression, she just doesn't care. She stated that she sometimes has problems interacting with people, and doesn't want to be around people at different times.

Regarding daily activities, plaintiff testified that she can drive. She goes to the grocery store about once a week, but tries to hurry so she can get out quickly. She does the cooking and the laundry. She does spend some time with friends, every two weeks or so. They might come over and talk or watch a movie. She might do the scrap booking every other month. She goes to church on Sundays.

According to the testimony of the vocational expert, plaintiff would not be able to perform any of her past relevant work. He testified that plaintiff could perform a less than full range of sedentary work, including jobs such as a table worker and administrative support addresser.

The ALJ found that plaintiff had not engaged in substantial gainful activity since May 23, 2007, the application date. It was the ALJ's finding that plaintiff has severe impairments of fibromyalgia, obesity, and thyroid disease. He found that plaintiff was not totally credible. The ALJ found that plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in [her] ability to perform basic mental work activities and is therefore, nonsevere." [Tr. 10]. He also concluded that her alleged mental impairment of depression disorder did not meet or medically equal Listing 12.04. The ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. It was his finding that plaintiff could not perform her past relevant work, but that she had the Residual Functional Capacity ["RFC"] to perform a less than full range of sedentary work. He found that she should not work at heights or around hazardous unprotected moving equipment; should avoid frequent or prolonged interaction with the public; and that while she

can pay attention to simple repetitive or routine tasks, she "must avoid high precision and high concentration tasks, fast paced activities with deadlines or quotas, and changing work settings." [Tr. 12]. Therefore, the ALJ found that plaintiff was not under a disability as defined by the Act.

Plaintiff contends that the ALJ erred in his credibility analysis because he relied too heavily on her limited daily activities and the objective evidence, and failed to consider the evidence that supported her credibility. She also contends that the ALJ erred in his RFC finding because he relied too heavily on the opinion of a non-medical state agency employee, rather than the opinion of the treating physician.

It is defendant's position that the ALJ articulated appropriate reasons for giving little weight to the opinion of Dr. Hernandez, the treating physician. It is asserted that the doctor's opinions were offered nearly two years after he last treated plaintiff, and that they were not supported by acceptable diagnostic procedures, nor were they consistent with his earlier treatment notes or plaintiff's representations. Defendant argues that Dr. Hernandez's extreme limitations, in which he opined that she would have to lie down 15 minutes out of every hour because of pain, and that she could lift no more than five pounds, were properly accorded little weight by the ALJ. It is also asserted that the ALJ properly found that the opinion of the state agency disability expert was more consistent with his findings, although the ALJ found a number of limitations beyond those of the state agency expert.

A review of the medical records indicates that plaintiff first saw Dr. Hernandez in December of 2006. She returned to him in February of 2007, complaining of pain in her left arm, bilateral leg pain from the knees down, and intermittent pain in her spine. She told the doctor that she had had the pain since November of 2006, but that it had gotten worse. The doctor

noted that she had no previous history or diagnosis of arthritis, and no history of a motor vehicle accident or falls. He observed that she complained of "leg pain [sic] ankle pain, knee pain and recently low back pain, localized, non radiated." [Tr. 152]. After reviewing x-rays, Dr. Hernandez diagnosed her with mild spondylosis and degenerative disc disease at various levels of the thoracic spine, suggested conservative care, and advised her to avoid repetitive lifting greater than 25 pounds. He also made an incidental finding of prominent bilateral thyroid enlargement, for which he recommended further evaluation. Plaintiff returned to Dr. Hernandez in July of 2007, complaining of intermittent pain in her legs, arms, and chest, and swelling in her feet and left hand. She advised that the pain was worse when she ran out of pain medication, such as Darvocet. The doctor diagnosed her with "Arthralgias with underlying osteoarthritis." [Tr. 182]. He prescribed more pain medication and medication for swelling. He observed that plaintiff wanted a second opinion with a rheumatologist. The record does not indicate that plaintiff saw Dr. Hernandez again after the appointment in July of 2007.

Plaintiff saw Dr. Butler, a family practice specialist, in July of 2007, with complaints of menstrual irregularity, difficulty conceiving and diffuse pain. Dr. Butler provided samples of Cymbalta for the pain, and plaintiff reported that it helped a little. She also observed that plaintiff had symptoms consistent with hypothyroidism, such as fatigue and depressed mood. Dr. Butler prescribed medication for the hypothyroidism and increased the dosage of pain medication.

In August of 2007, plaintiff saw the Dr. Simon, a rheumatologist. He diagnosed her with generalized fibromyalgia pain syndrome, and prescribed cyclobenzaprine, a muscle relaxer. He also suggested Naproxen. A bone scan after that showed possible degenerative changes in the shoulder joints and left ankle, but was otherwise unremarkable. Plaintiff returned to Dr. Simon in

September, at which time he diagnosed fibromyalgia. He increased her dosage of the muscle relaxer, and noted that she had not been routinely taking the Naproxen, as he had recommended.

The medical records also indicate that plaintiff complained of pain with Dr. Butler when she saw her in August of 2007 and in January of 2008. The records indicate that plaintiff went to the emergency room on several occasions. She was treated for a fall and an injury to her foot, and was diagnosed with an enlarged thyroid and a thyroid goiter. She also saw Dr. Butler throughout 2008, with various complaints, including pain and fatigue, although she noted that medication helped with the pain. In 2009, she was treated for her thyroid problem and thyroid goiter. In April of that year, she saw a surgeon for evaluation of the thyroid goiter; her medication dosage was increased and she was referred to an endocrinologist, who adjusted her medication and found no need for a further work-up.

In June of 2009, Dr. Hernandez completed two assessment forms at the request of plaintiff's counsel in which he opined, among other things, that plaintiff could only lift five pounds frequently; that she could stand or walk 15 minutes for a total of two hours in a workday; could sit up to two hours in a workday; that she would need to lie down 15-30 minutes of every hour; and that her pain limited her physically and mentally. He also completed a mental assessment, in which he opined that she was markedly limited in several areas, including her ability to remember locations and work-like procedures, and in her ability to adapt.

A consultative examining rheumatologist, Dr. Stanley Hayes, performed an examination of plaintiff in July of 2009. He found her pain to be exaggerated, and while he did not disagree with the diagnosis of fibromyalgia, he noted that she could perform various daily activities. It was his opinion that she could lift 20 pounds frequently, sit six hours in a workday, and stand or walk four hours in a workday. He also noted that possible depression or malingering was present.

It was his opinion that she was on appropriate thyroid replacement therapy.

Regarding plaintiff's contention that the ALJ in his credibility assessment, in discrediting subjective claims, the ALJ cannot simply invoke Polaski or discredit the claims because they are not fully supported by medical evidence. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). Instead, the ALJ must make an express credibility determination that explains, based on the record as a whole, why the claims were found to be not credible. Id. at 971-72. "Where adequately explained and supported, credibility findings are for the ALJ to make." Id. at 972.

In plaintiff's case, the ALJ found that her ability to engage in many normal daily activities, including performing many household duties, visiting with family and friends, shopping for groceries, attending church, scrap booking, and walking for exercise, were inconsistent with her allegations that she is unable to work.

Regarding plaintiff's complaint that the ALJ erred in his credibility determination because he relied too heavily on objective medical evidence, a review of the record indicates that although it is documented that plaintiff suffers from pain, that pain is helped with medication; that x-rays showed that she had only mild spondylosis with no fractures; a bone scan showed possible degenerative changes in her shoulder and left ankle, but was otherwise unremarkable; that just two months before the hearing, she had a full range of motion, with strength and tone intact; that she did not consistently seek treatment only for pain; and that at least one doctor opined that her pain was exaggerated, with the possibility of malingering. Therefore, it is clear that there is substantial evidence in the record as a whole to support the ALJ's decision to partially discredit plaintiff's testimony.

Based on a full review of the record, the Court concludes that the ALJ adequately discussed the factors set forth in Polaski. Further, the Court finds that the ALJ made an express

credibility determination, adequately explaining why he found plaintiff's claims not to be fully credible. Lowe , 226 F.3d at 972. The Court finds that there is substantial evidence to support the ALJ's conclusions regarding plaintiff's credibility.

Regarding the RFC finding, the Eighth Circuit has recognized that the RFC finding is a determination based upon all the record evidence, not just "medical" evidence. See Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001); Dykes v. Apfel, 223 F.3d 865, 866-67 (8th Cir.2000) (citing 20 C.F.R. § 404.1545; SSR 96-8p at pp. 8-9). The RFC formulation is a part of the medical portion of a disability adjudication. Although it is a medical question, the RFC findings are not based only on "medical" evidence, i.e., evidence from medical reports or sources. Rather, an ALJ has the duty, at step four, to formulate the RFC based on all the relevant, credible evidence of record. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations).

While a treating physician's opinions are ordinarily to be given substantial weight, they must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). The ALJ may reject the opinion of any medical expert if it is inconsistent with the medical record as a whole. See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). In Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000), the Eighth Circuit Court of Appeals discussed the weight to be given to the opinions of treating physicians, holding that the opinion of a treating physician is accorded special deference under the Social Security regulations. The Court has, however, upheld an ALJ's decision to discount or

even disregard the opinion of a treating physician where other medical assessments "are supported by better or more thorough medical evidence," Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997), or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.  Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996).

Plaintiff asserts that the RFC was not based upon the medical evidence because the ALJ relied on the opinion of a non-medical lay employee. Therefore, she asserts that the RFC is improper.  In terms of the weight afforded to the opinion of the treating physician and that afforded to the state agency employee, the Court has reviewed those opinions, as well as that of the consultative examiner's opinion.  In this case, the Court finds that there is substantial evidence to support the ALJ's decision regarding plaintiff's RFC.  Although he did not give weight to the severe restrictions imposed by Dr. Hernandez, a careful review indicates that this decision was supported by the fact that those limitations were not reflected by Dr. Hernandez's treatment records.  It is also worth noting that the assessments provided by the doctor were made over two years after he had last treated her. The record reflects that the ALJ properly considered all the evidence of record in analyzing plaintiff's credibility, and then properly considered all of the evidence of plaintiff's restrictions found to be credible in determining her RFC.  He limited her to a less than full range of sedentary work.  Despite the severe impairments recognized by the ALJ and incorporated into the RFC, there is nothing in the record to suggest that plaintiff cannot perform sedentary work within the range recommended by the vocational expert.  The record as a whole does not establish that she has a disabling impairment that would totally preclude her from working.  The ALJ was under no obligation to further develop the record.  Adequately presenting her alleged disabilities is the responsibility of plaintiff.

A review of the record indicates that the ALJ relied on the record as a whole in rendering

his decision, including medical evidence from various sources, as well as plaintiff's testimony. It is apparent that he thoroughly reviewed the record in great detail. He gave little weight to the findings of Dr. Hernandez on his assessment forms, finding that these were not supported by the evidence as a whole, were not supported by the doctor's own reports, and were not supported by objective clinical or laboratory diagnostic findings. The ALJ also rejected the opinion of the consultative rheumatologist regarding her being able to frequently lift or carry 20 pounds and occasionally lift or carry 50 pounds, finding it to be "unreasonable in the light of the claimant's many subjective complaints, and extensive medical evaluation and treatment history, even in the absence of well defined objective clinical and laboratory diagnostic findings." [Tr. 16]. The ALJ did refer to assessment of a non-examining, non-physician Disability Determination Service ["DDS"] consultant, but merely noted that it was "more consistent with the findings of the undersigned." The examiner opined, on a physical RFC assessment, that plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and could stand or walk six hours in a workday, with no additional limitations. [Tr. 17]. While plaintiff argues that the ALJ erred in relying on the opinion of a non-medical examiner, in this case, a careful review of the record indicates that the ALJ properly relied on the medical record as a whole to support his RFC conclusions, and there was not undue reliance on the DDS examiner's assessment. In fact, the ALJ, in his RFC findings, found a number of limitations that the expert did not include in his assessment. To argue that the ALJ erroneously relied on the opinion of a non-examining consultant regarding plaintiff's ability to perform some sedentary work misstates the record, and the Court finds that there was no error in this regard. The Court finds there is substantial evidence in the record to support the ALJ's decision regarding the weight given to treating and non-treating sources.

Having fully reviewed the record, the Court finds that the ALJ's decision reflects that he

carefully considered plaintiff's course of treatment, reviewed all the relevant diagnostic tests and medical records, as well as plaintiff's credibility, and relied on the opinion of the vocational expert.   Although the ALJ accepted the diagnosis of fibromyalgia, he relied on the fact that even according to plaintiff's own testimony, she did not suffer from a condition that precluded her from engaging in daily activities suggestive of someone with lesser limitations than those she described at the hearing.  Additionally, the ALJ took into account those limitations he found credible in determining an RFC for a limited range of sedentary work.

Having fully reviewed the record, the Court finds that there is substantial evidence to support the ALJ's determination plaintiff that  had the RFC to perform a limited range of sedentary work.  Based on the record as a whole, it cannot be said that the ALJ erred in his RFC assessment.

Based on the foregoing, the Court finds that there is substantial evidence in the record to support the ALJ's decision that plaintiff does not suffer from a disabling impairment, and that she was not disabled under the Act during the time period in question. Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir.  2006).   The ALJ's finding that plaintiff was not disabled is supported in the record as a whole.   Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.

/s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date:    1/27/12